## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DAWSON W. WISE, | ) | CASE NO.  5:12-CV-01653 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| | ) | |
| ZWICKER & ASSOCIATES, PC, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on the motion (ECF No. 17) of defendants Zwicker & Associates, PC; Derek Scranton; and Anne Smith to dismiss or stay proceedings and compel arbitration.[1] Plaintiff Dawson W. Wise has filed a response in opposition (ECF No. 18), and defendants have submitted a brief in reply (ECF No. 19). The matter is ripe for determination. For the following reasons, defendants' motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Zwicker & Associates, PC ("Zwicker"), is a Massachusetts corporation registered in Ohio and specializing in debt collection on behalf of various creditors. (ECF Nos. 1, 13 at ¶ 5.) Defendants Derek Scranton ("Scranton") and Anne Smith ("Smith") are Zwicker attorneys licensed to practice in Ohio. (*Id.*)

---

[1] Although their motion is titled "Motion of All Defendants to Compel Arbitration and Stay Proceedings During Arbitration," defendants make clear that they seek either a stay or dismissal.

On June 27, 2011, as part of their work for Zwicker, Scranton and Smith filed a complaint on behalf of a client, American Express Centurion Bank ("American Express"), in the Summit County Court of Common Pleas against plaintiff Dawson W. Wise ("Wise"). (ECF No. 1–1.) Therein, American Express, c/o Zwicker, alleged that Wise had a credit account with American Express and failed to make required payments on that account. (*Id.* at ¶¶ 4–7.) In the state court suit, American Express sought payment of approximately forty thousand dollars, plus interest, attorney's fees, and court costs. (*Id.* at 12.)[2]

As a result of the state court complaint, on June 26, 2012, Wise brought a putative class-action complaint in this Court, accusing defendants of "deceptive, unfair, and unconscionable debt collection practices" under the Fair Debt Collection Practices Act ("FDCPA") and the Ohio Consumer Sales Practices Act ("OCSPA"). (ECF No. 1 ¶ 1.) Wise alleges that defendants have attempted to collect attorney's fees in connection with their debt collection efforts in Ohio, fees that, he asserts, are not recoverable by law. (*Id.* ¶ 2.)

Along with his complaint, Wise attached a document entitled "Agreement Between American Express Credit Cardmember and American Express Centurion Bank" (the "Agreement"), which Wise acknowledges as the operative agreement between him and American Express (ECF No. 1–2). Defendants do not dispute its validity. The 11-page Agreement includes a portion entitled "Arbitration" (the "Arbitration Provision"),

---

[2] References to individual pages in the record are made using the continuous pagination applied by the electronic docketing system.

2

which contains, among other things, a definition of the claims subject to arbitration under the Agreement, a definition of the parties that may elect to pursue arbitration, a class-action waiver, and various procedures to be followed in the event of arbitration. (*Id.* at 15–16.)

On January 7, 2013, defendants brought the subject motion seeking to dismiss or stay the case and compel arbitration under the terms of the Agreement.

## II. LEGAL STANDARD

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, manifests "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3, 4). In cases where all claims are referred to arbitration, however, the litigation may be dismissed rather than merely stayed. *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009).

The Sixth Circuit applies a four-pronged test to determine whether to grant motions to dismiss or stay the proceedings and compel arbitration:

> (1) The Court must determine whether the parties agreed to arbitrate;
> (2) The Court must determine the scope of that agreement;
> (3) If federal statutory claims are asserted, the Court must consider
>     whether Congress intended those claims to be non-arbitrable; and

> (4) If the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

## III. ANALYSIS

**A. Choice of Law**

At the outset, the Court must determine what law governs the Agreement. Under the "saving clause" of § 2 of the FAA,[3] arbitration agreements can be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (quotation omitted). The source of "generally applicable contract defenses" remains applicable state law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) ("Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation.").

---

[3] FAA § 2 reads:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Before the Court can apply state-law principles to determine the validity of the Arbitration Provision, the Court must determine which state's laws to apply, using the choice-of-law rules of the forum state, here, Ohio. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). Under Ohio law, "the governing law specified in a contract is applied unless the chosen state lacks a substantial relationship to the parties or the transaction or unless the application of the law of the chosen state would be contrary to a fundamental policy of a state with a materially greater interest in the transaction." *Cincinnati Gas & Elec. Co. v. Westinghouse Elec. Corp.*, 165 F.3d 26 (table), at *2 (6th Cir. 1998) (citing *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, 686 (Ohio 1983)).

The Agreement contains a choice of law clause, which invokes Utah law:

> This Agreement and your Account, and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of Utah (without regard to internal principles of conflicts of law), and by applicable federal law. We are located in Utah, hold your Account in Utah, and entered into this Agreement with you in Utah.

(ECF No. 1–2 at 16.) Wise does not argue that Utah lacks a substantial relationship to the parties or the transaction or that application of Utah law would be contrary to a fundamental policy of Ohio or any other state. What Wise does argue, however, is that, "rather than adhering to the contract law principles of any specific state, courts are to apply ordinary contract principles, in general, under the FAA." (ECF No. 18 at 109.) As noted above, this is incorrect: the contract law of the appropriate state governs the Court's inquiry into the validity of the Arbitration Provision. *See Concepcion*, 131 S.Ct. at 1476; *Kaplan*, 514 U.S. at 944.

5

Because the Agreement contains a choice of law clause designating Utah law, and because Ohio law calls for the clause to be applied, the Court will evaluate the Agreement under Utah law.

## B. The Existence of an Agreement to Arbitrate

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).[4] "[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [Federal Arbitration] Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989) (internal citation omitted). Nonetheless, "we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted).

Under Utah law, "[a]n ambiguity exists in a contract term or provision if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *WebBank v. Am. Gen. Annuity Serv.*

---

[4] In defendants' reply brief, they state that the subject motion is non-dispositive, and, noting the fourteen-day period provided in Local Rule 7.1(d) for filing a response in opposition to a non-dispositive motion, invite the Court to disregard plaintiff's memorandum in opposition, filed twenty-five days after defendants' motion, as untimely. To the contrary, a motion to stay, or, alternatively, to dismiss, and compel arbitration is a dispositive motion in this Court. *See Packer, Thomas & Company v. Fed. Ins. Co.*, 2010 WL 148140, at *1 n.2 (N.D. Ohio Jan. 12, 2010). Plaintiff's opposition was timely filed within the thirty-day period provided by Local Rule 7.1(d) for responding to a dispositive motion.

*Corp.*, 54 P.3d 1139, 1145 (Utah 2002) (internal quotation omitted). "A contract term is not ambiguous simply because one party ascribes a different meaning to it to suit his or her own interests." *Basic Research, LLC v. Admiral Ins. Co.*, No. 20110556, __ P.3d __, 2013 WL 563359, at *2 (Utah Feb. 8, 2013). "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Smargon v. Grand Lodge Partners, LLC*, 288 P.3d 1063, 1075 (Utah 2012).

In the instant case, the Arbitration Provision calls for the arbitration of claims between "you" and "us," as those terms are defined in the Agreement. The first paragraph of the Agreement states that the terms "we," "our," and "us" refer to "American Express Centurion Bank." Two pages later, the Arbitration Provision adds additional substance to that definition:

> For purposes of this Arbitration Provision, 'you' and 'us' also includes any corporate parent, or wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns, any purchaser of any accounts, *all agents, employees, directors and representatives of any of the foregoing*, and other persons referred to below in the definition of 'Claims.'

Continuing, the Arbitration Provision, in its definition of a "Claim," introduces entities that can contingently become part of "us":

> 'Claim' includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity. 'Claim' also includes *claims by or against* any third party using or providing any product, service or benefit in connection with any account (including, but not limited to, . . . *debt collectors* and all of their agents, employees, directors and representatives) *if and only if, such third party is named as a co-party with you or us* (or

7

files a Claim with or against you or us) *in connection with a Claim asserted by you or us against the other*.

(ECF No. 17–1 at 90) (emphasis added).

Defendants argue that they are both "agents" and "debt collectors" under the Agreement with respect to American Express and that they can compel arbitration as either one. Plaintiff counters that defendants are only properly categorized as "debt collectors" under the Agreement and that, in any event, they do not meet the definition of "us" such that they can compel arbitration of plaintiff's claims.

It is a well-established principle of contract interpretation that specific terms are given greater weight than general language. *TFG-Ill., L.P. v. United Maint. Co.*, 829 F. Supp. 2d 1097, 1116 (D. Utah 2011) (citing *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 78 F.3d 474, 480–81 (10th Cir. 1996)) (quoting *Mutual Life Ins. Co. of New York v. Hill*, 193 U.S. 551, 558 (1904) ("The ordinary rule in respect to the construction of contracts is this: that where there are two clauses in any respect conflicting, that which is specially directed to a particular matter controls in respect thereto over one which is general in its terms, although within its general terms the particular may be included.")); Restatement (Second) of Contracts § 203(c). Although Utah law governs the Court's analysis, several cases from elsewhere apply this same principle of interpretation to similar facts, providing useful persuasive authority as to how the Supreme Court of Utah would interpret the Agreement.

In *Karnette v. Wolpoff & Abramson, L.L.P.*, 444 F. Supp. 2d 640 (E.D. Va. 2006), a court applied this principle to an issue almost identical to the instant case. There, a law firm represented a bank for the purposes of collecting credit card debts. *Id.* at 641–

8

42. The firm sought to arbitrate an FDCPA claim under the credit card agreement, which had an arbitration provision allowing for the arbitration of claims against "agents" of the bank, regardless of whether the bank was also a party. *Id.* at 644–45. Another part of the arbitration provision, however, made clear that claims against "debt collectors" could only be arbitrated under the agreement if the bank was also named as a co-defendant. *Id.* The law firm argued that it was the bank's "agent" and could therefore arbitrate the FDCPA claim under the agreement. *Id.* at 645. However, the court noted that it was also undisputed that the firm was a "debt collector" under the agreement, and that "[w]hile a debt collector may function as an agent for the specific purpose of collecting debts, time-honored principles of contract construction require a thing specifically named to be specifically treated." *Id.* Accordingly, because the law firm was a "debt collector" under the agreement, not an "agent," and because the arbitration provision did not cover claims against debt collectors unless the bank was also a co-defendant, there was no agreement to arbitrate the cardholder's FDCPA claim against the law firm. *Id.* at 646.

Other courts have faced the same circumstances and come to the same conclusion. *See Cohen v. Wolpoff & Abramson, LLP*, No. 08-1084, 2008 WL 4513569, at *3–*4 (D.N.J. Oct. 2, 2008) (finding the arbitration provision to be "clear and unambiguous" and denying a debt collecting law firm's motion to compel arbitration of an FDCPA claim against a law firm when the credit card company was not also named in the suit); *Bontempo v. Wolpoff & Abramson, L.L.P.*, No. Civ.A. 06-745, 2006 WL 3040905, at *7 (W.D. Penn. Oct. 24, 2006) (citing *Karnette* with approval and holding same). Predictably, where similar conditions existed, but the credit card issuer *was* made

a party to the case, courts have granted motions to compel arbitration involving a "debt collector." *See Schiano v. MBNA*, No. 05-1711, 2012 WL 4103878, at *9 (D.N.J. Aug. 14, 2012) *report and recommendation adopted by* 2012 WL 4103877 (D.N.J. Sept. 17, 2012) (distinguishing *Karnette*, *Cohen*, and *Bontempo* and granting debt collection law firm's motion to compel arbitration because plaintiffs named the credit card issuer as a co-defendant in the suit); *Coleman v. Assurant, Inc.*, 508 F. Supp. 2d 862, 869 (D. Nev. 2007).

The instant case is almost identical to *Karnette*, *Cohen*, and *Bontempo*. Defendants, a law firm and two of its attorneys, working as debt collectors for American Express, are attempting to arbitrate FDCPA and OCSPA claims brought by an account holder. The agreement in question allows for arbitration of claims against agents of certain entities, but claims against third-party debt collectors cannot be arbitrated unless American Express itself is also a party. That is, in the words of the Arbitration Provision, claims against third-party debt collectors can be arbitrated "if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a Claim asserted by you or us against the other."

The reasoning behind these decisions is sound. As the court explained in *Karnette*:

> By putting the Arbitration and Litigation section in the credit card agreement, [the credit card issuer] sought to limit its exposure, and the exposure of all in its corporate family, to litigation in court. It also foresaw that plaintiffs might sue third party entities together with [the credit card issuer]. Therefore, [the credit card issuer] wrote a clause into the arbitration agreement that required arbitration where [the credit card issuer] was joined as a co-defendant in a suit against a third party. However, for obvious reasons, [the credit card issuer] had less reason for

10

concern about suits against third parties where [the credit card issuer] was not a co-defendant. Thus, given its plain meaning and accorded a common sense construction, the arbitration clause does not operate here because [the credit card issuer] is not a co-defendant in this action.

444 F. Supp. 2d at 645. On this basis alone, defendants do not have a right to compel arbitration.

The contract language in this case presents defendants with an additional problem not faced by the parties seeking to compel arbitration in *Karnette*, *Cohen*, and *Bontempo*: even if defendants were recognized as American Express's "agents" under the Arbitration Provision, the plain language of the Agreement would not define them as part of the term "us." In the first paragraph of the Agreement, "us" is initially defined as simply American Express, with no reference to agents or any other entity. (ECF No. 17–1 at 88.) Two pages later, in the Arbitration Provision, the definition of "us" is expanded to "also include[ ] any corporate parent, or wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns, any purchaser of any accounts, *all agents, employees, directors and representatives of any of the foregoing*, and other persons referred to below in the definition of 'Claims.'" (*Id.* at 90) (emphasis added.) The reference to "all agents . . . of any of the foregoing" refers to the entities specifically listed in that same paragraph, which do not include American Express itself. Consequently, while the agents of American Express's corporate parents are included in the definition of "us," the agents of American Express itself are not.[5]

---

[5] The court in *Karnette* set forth alternative grounds for denying the motion to compel arbitration that would also apply in the alternative here. If defendants were "agents" of American Express under the Agreement, and if "agents" of American Express fell under the definition of "us" such that claims against them triggered the Arbitration Provision, then an ambiguity would result from the fact that defendants are also admittedly "debt collectors" under the Agreement, and "debt collectors" cannot force arbitration if

Accordingly, the Court finds that the Agreement is unambiguous, that principles of contract interpretation require defendants to be categorized as "debt collectors" under the Arbitration Provision, and that defendants do not meet the Agreement's definition of the term "us." Because only claims between "you" and "us" fall within the scope of the arbitration provision, the Agreement is not an agreement between plaintiff and defendants to arbitrate plaintiff's claims, and defendants cannot compel plaintiff to arbitrate.

## C. The Scope of the Arbitration Provision

Alternatively, in addition to not being parties to the Agreement, defendants' motion fails because plaintiff's claims do not fall within the scope of the Arbitration Provision. Although "Claim" is initially given a broad definition, the Arbitration Provision carves out claims against debt collectors where American Express is not also a party: "'Claim' also includes claims . . . against . . . debt collectors and all of their agents . . . if and only if, such third party is named as a co-party with you or us . . . ." By including the parties that can bring a "Claim" within the definition of a "Claim" itself, any claim held by a nonparty to the Agreement is, by definition, not a "Claim" within the scope of the Arbitration Provision.[6]

---

American Express is not a party. *See Karnette*, 444 F. Supp. 2d at 646–47. Although ambiguities in the *scope* of an arbitration clause are construed in favor of arbitration, the long-standing rule of *contra preferentum* applies elsewhere within an arbitration agreement. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64 (1995). Under defendants' proposed construction, as the purported "agents" of American Express, the drafter of the Agreement, that ambiguity is construed against them, and they may not compel arbitration of plaintiff's claims. *Karnette*, 444 F. Supp. 2d at 647.

[6] The alternative grounds recognized in *Karnette*, 444 F. Supp. 2d at 646–47, based on identifying an ambiguity with respect to the parties to the Agreement and construing that ambiguity against American Express, would not apply here, as this deals with the scope of the Arbitration Provision, and "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." *Volt*, 489 U.S. at 475–76 (1989) (internal citation omitted).

**D. Non-signatory Theories**[7]

Utah law has recognized five theories whereby a non-signatory can bind a signatory to an agreement to arbitrate: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter-ego; 5) estoppel; and 6) third-party beneficiary. *Ellsworth v. Am. Arbitration Ass'n*, 148 P.3d 983, 988–90, 989 n.11–12 (Utah 2006). Defendants argue here that agency and estoppel theories allow them to enforce the Arbitration Provision in the Agreement as a non-signatory.[8]

*1. Estoppel*

With respect to non-signatory estoppel, defendants argue that plaintiff's claims are "intertwined" with the Agreement and therefore arbitrable under *Javitch v. First Union Secs., Inc.*, 315 F.3d 619 (6th Cir. 2003) and *Liedtke v. Frank*, 437 F. Supp. 2d 696 (N.D. Ohio 2006). In *Javitch*, the Sixth Circuit approvingly cited a Second Circuit case, *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995), which identified five theories for binding  non-signatories to arbitration agreements, including agency and estoppel. *Javitch*, 315 F.3d at 629. Moreover, the court in *Javitch* noted that "a signatory . . . may be estopped from avoiding arbitration with a  nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the underlying contract." *Id.* (citing *Thomson-CSF*, 64 F.3d at 779). Later, in *Liedtke*, a court

---

[7] Defendants only raise their non-signatory theories of estoppel and agency in their reply brief, after plaintiff made note in his opposition that defendants had not done so in their opening brief. (Doc. No. 18 at 109 n.5.) The Court could reject defendants' arguments on that basis alone. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (issues raised for the first time to the district court in a reply brief are waived).

[8] Because plaintiff's claims do not fall within the scope of the arbitration provision, defendants' non-signatory theories must fail. However, out of an abundance of caution, the Court analyzes and evaluates them independently.

from this district cited *Javitch* and *Thomson-CSF* and added additional language from an

Eleventh Circuit case, *MS Dealer Serv. Corp. v. Franklin*, which stated that:

> Existing case law demonstrates that equitable estoppel allows a
> nonsignatory to compel arbitration in two different circumstances. First,
> equitable estoppel applies when the signatory to a written agreement
> containing an arbitration clause "must rely on the terms of the written
> agreement in asserting [its] claims" against the nonsignatory. When each
> of a signatory's claims against a nonsignatory "makes reference to" or
> "presumes the existence of" the written agreement, the signatory's claims
> "arise[ ] out of and relate [ ] directly to the [written] agreement," and
> arbitration is appropriate. Second, "application of equitable estoppel is
> warranted . . . when the signatory [to the contract containing the
> arbitration clause] raises allegations of . . . substantially interdependent
> and concerted misconduct by both the nonsignatory and one or more of the
> signatories to the contract."

437 F. Supp. 2d at 699 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947

(11th Cir. 1999)).

Defendants incorrectly utilize federal law rather than Utah law to evaluate

whether an arbitration clause is enforceable by a non-signatory under the FAA. *See

Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). However, the error is

essentially harmless, as the cases cited by the Supreme Court of Utah to establish non-

signatory estoppel also trace back to *MS Dealer*. *See Ellsworth*, 148 P.3d 983 at 989 n.12

(Utah 2006) (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir.

2000), which adopted the "intertwined-claims test" from *MS Dealer*). Additionally, the

court in *Grigson* added that equitable estoppel "is much more readily applicable when the

case presents both independent bases advanced by the Eleventh Circuit for applying the

intertwined-claims doctrine[,]" that is, both when the signatory "must rely on the terms of

the written agreement in asserting its claims against the nonsignatory" and when the

signatory "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more . . . signatories . . . ." *Grigson*, 210 F.3d at 527–28.

The rationale behind *Grigson* for estopping a signatory from avoiding arbitration against a non-signatory is that a signatory cannot "'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement . . . but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id.* at 528 (citing *MS Dealer*, 117 F.3d at 947). "Moreover . . . it would be especially inequitable where . . . a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant. In such instances, that signatory, in essence, becomes a party, with resulting loss, *inter alia*, of time and money because of its required participation in the proceeding." *Grigson*, 210 F.3d at 528. For those reasons, the court determined that "whether to utilize estoppel in this fashion is within the district court's discretion . . . ." *Id.*

The instant case presents none of *Grigson*'s reasons for estopping plaintiff from avoiding arbitration. Plaintiff's claims rely on defendants' alleged representations, both in complaints filed against consumers and in verbal and/or written demands made before and after the filing of complaints. The claims assert that defendants are liable pursuant to federal and state law, not pursuant to any duties imposed by the Agreement. *See Bontempo*, 2006 WL 3040905, at *7 (finding a substantially similar arbitration provision did not meet *Grigson*'s first estoppel criterion because the plaintiff "could have asserted his claim . . . without making any reference to his Agreement"); *see also Lenox*

*MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 710 (10th Cir. 2011) ("For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to plaintiff's claims or has a 'but-for' relationship with them.").[9] In addition, plaintiff does not allege any interdependent or concerted misconduct whatsoever between defendants and American Express. All of his allegations are strictly confined to defendants. Accordingly, defendants' belatedly raised  non-signatory estoppel theory is unavailing.

### *2. Agency*

Defendants would also have the Court compel arbitration under a non-signatory theory of agency. That theory, however, has seen little practice under Utah law. In the closest case on point, *Nueterra Healthcare Mgmt, LLC v. Parry*, 835 F. Supp. 2d 1156 (D. Utah 2011), the District of Utah allowed members of the board of managers of a surgery center to enforce an arbitration agreement as the center's agents. 835 F. Supp. 2d at 1161–62. But there, unlike the instant case, agency was undisputed, and the agents sought to enforce the terms of the very agreement containing the arbitration provision. *Id.*

As with non-signatory estoppel, fairness concerns underpin non-signatory agency theory. In *Arnold v. Arnold Corp.-Printed Commc'ns for Bus.*, 920 F.2d 1269, (6th Cir. 1990) the Sixth Circuit was concerned that a plaintiff "c[ould] avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as

---

[9] The fact that one of the allegedly illegal representations was made via defendants' attachment of the Agreement to its state court complaints does not change the fact that plaintiff is not seeking to assert any rights allegedly imposed by the Agreement.

16

[defendants] in his complaint, or signatory parties in their individual capacities only." 920 F.2d at 1281 (second alteration in the original). In such an instance, "the rule requiring arbitration would, in effect, be nullified." *Id.* In several circuits, these concerns must be present; "an agency relationship alone is insufficient to permit a non-signatory to compel arbitration." *Palmer Ventures LLC v. Deutsche Bank AG*, 254 F. App'x 426, 433 (5th Cir. 2007) (collecting cases). Those courts perform an analysis similar to the *Grigson* tests in evaluating whether an agent can compel arbitration. *Id.* (holding that an agent failed to "satisfy the *Grigson* analysis"); *JLM Indus., Inc. v. Stolt-Nielsen S.A.*, 387 F.3d 163, 177 (2d Cir. 2004); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir. 1988).

The legal relationship between a creditor and debt collection law firm under Utah law is unclear. *Compare Martinez v. Johnson*, No. 2:11CV157-DN, 2013 WL 1031363, at *7 (D. Utah Mar. 14, 2013) (quoting *Randolph v. IMBS Inc.*, 368 F.3d 726 (7th Cir. 2004), "[A] debt collector is an independent contractor, not the creditor's agent," and rejecting the argument that a debt collection law firm and its attorneys were Capital One's agent in an FDCPA case) *with Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1335 (D. Utah 1997) (stating that "the terms 'agent' and 'independent contractor' are not mutually exclusive" and finding a debt collection law firm to be a creditor's agent).

Moreover, defendants offer no factual support for their claim that they are agents of American Express. They did not submit an affidavit or any other documentation

with their motion to provide evidence of the relationship.[10] In fact, the Agreement itself, by classifying debt collectors as "third parties" and explicitly removing claims against them from the Arbitration Provision when American Express is not also party, provides a strong indication that American Express did not consider defendants to be its agents.

In short, it would be improper to allow defendants to compel arbitration in this case on a non-signatory theory of agency. First, the Court knows of no case under Utah law that has applied the theory to entities as far removed as a debt collector from a credit provider. Indeed, the most recent court to address the issue explicitly held that a debt collecting law firm is *not* an agent of a credit provider. *See Martinez*, 2013 WL 1031363, at *7. Also, none of the fairness concerns at the heart of why courts allow non-signatories to enforce agreements are present here. Finally, defendants' argument—again, citing the wrong source of law and offering no factual evidence in support—is "cursory and superficial at best, perfunctory and slap-dash at worst." *Associated Gen. Contractors v. Bd. of Oil, Gas and Mining*, 38 P.3d 291, 303 (Utah 2001) (internal quotation omitted).

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration is **DENIED**.

**IT IS SO ORDERED**.

Dated: March 22, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[10]  Indeed, credit providers often require debt collectors to expressly disavow any principal/agent relationship in their contracts with each other. *See, e.g.*, *Butto v. Collecto Inc.*, 802 F. Supp. 2d 443, 449 (E.D.N.Y. 2011); *Lucy v. Bay Area Credit Svc LLC*, 792 F. Supp. 2d 320, 325 (D. Conn. 2011); *Mims v. Global Credit and Collection Corp.*, 803 F. Supp. 2d 1349, 1355 (S.D. Fla. 2011).

18