**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAWSON W. WISE, | ) | CASE NO. 5:12-cv-1653 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | ORDER AND OPINION |
| ZWICKER & ASSOCIATES, PC, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on defendants' motion for judgment on the pleadings. (Doc. No. 26.) Plaintiff has filed a response (Doc. No. 30), and defendants have filed a reply. (Doc. No. 35.) Also before the Court is plaintiff's motion for leave to file a response to defendants' reply (Doc. No. 36), which is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

American Express Centurion Bank ("American Express") extended credit to plaintiff, who thereby assented to the "Agreement Between American Express Credit Cardmember and American Express Centurion Bank" ("Agreement"). (Doc. No. 1-2.) The Agreement provides:

> This Agreement and your Account and all questions about their legality, enforceability and implementation, are governed by the laws of the State of Utah (without regard to internal principles of conflicts of law) and by applicable federal law. We are located in Utah, hold your Account in Utah, and entered into this Agreement with you in Utah.

(*Id*. at 16.) The Agreement also states, "You agree to pay all reasonable costs, including reasonable attorneys' fees, incurred by us [] in connection with the collection of any amount due

on your Account." (*Id.* at 15.)

Plaintiff defaulted. On June 27, 2011, American Express filed suit against plaintiff in the Summit County Common Pleas Court. (Doc. No. 1 at 3.) American Express demanded "judgment against Defendant(s), DAWSON WISE, on Counts One and Two of its Complaint, in the sum of $40,047.98, plus pre-judgment interest at the statutory rate from the date of filing to the date of judgment, plus post-judgment interest on the balance at the statutory rate from the date of judgment, *plus attorney fees*, plus court costs." (Doc. No. 1-1 at 12 (emphasis added).) In the Summit County litigation, defendant Zwicker & Associates, a corporation specializing in debt collection, and two of its attorneys, defendants Derek W. Scranton and Anne M. Smith (collectively, "defendants"), represented American Express. (Doc. No. 1 at 3.)

Based upon defendants' demand in the state court complaint for attorney fees (Doc. No. 1-1 at 12), as well as defendants' efforts to "[seek] such attorney fees outside of the formal proceedings of state court[,]" plaintiff sued defendants for violating the Fair Debt Collection Practices Act ("FDCPA")[1] and the Ohio Consumer Sales Protection Act ("OCSPA"). (Doc. No. 1 at 4.) Specifically, plaintiff asserts violations of 15 U.S.C. § 1692e(2)(A)-(B); 15 U.S.C. § 1692e(5); 15 U.S.C. § 1692f(1); and 15 U.S.C. § 1692e(10).[2] Plaintiff also asserts

---

[1] The parties do not dispute that the Fair Debt Collection Practices Act applies to these defendants: "attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

[2] In relevant part, the statutes provide:

A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*\*\*

(2) The false representation of—
    (A) the character, amount, or legal status of any debt; or
    (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

\*\*\*

2

violations of Ohio Rev. Code §§ 1345.02 and 1345.03, both of which prohibit certain acts in connection with consumer transactions. In essence, plaintiff claims that Ohio law prohibits seeking attorney fees in connection with consumer debt collection, rendering defendants' demand for fees a "false, deceptive, misleading, and threatening" debt collection practice in violation of state and federal law. (Doc. No. 1 at 4.) In his complaint, plaintiff details three scenarios in which defendants wrongfully demanded attorney fees: (1) in the state court complaint filed by defendants; (2) "[e]ven before filing a complaint in state court against consumers such as named [p]laintiff[;]"[3] and (3) "outside the formal proceedings of state court" after filing the state court complaint. (Doc. No. 1 at 3-4.)

Defendants filed a motion to compel arbitration (Doc. No. 17), which was denied. (Doc. No. 21.) In its Memorandum Opinion and Order denying the motion to compel, the Court ruled that the Agreement between plaintiff and American Express "contains a choice of law clause designating Utah law" as the governing law and further finding that "Ohio law calls for the clause to be applied, [so] the Court will evaluate the Agreement under Utah law." (Doc. No. 21 at 217.) Based, in part, upon the choice of law clause, defendants have filed a motion for

---

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
\*\*\*
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer.

15 U.S.C. § 1692e.
A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f.
[3] Plaintiff initially sought to certify a class, but the Court denied without prejudice his motion for certification. (Doc. No. 22.)

judgment on the pleadings (Doc. No. 26), claiming that, because Utah law applies and provides for attorney fees, plaintiff's complaint fails as a matter of law. In opposition, plaintiff states that Ohio law applies. (Doc. No. 30.)

## II.  STANDARD OF REVIEW

Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007).  Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 555 (citing authorities).

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists

4

and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer. *See* Fed. R. Civ. P. 12(c). "The court can also consider (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted).

III. LAW AND ANALYSIS

A.  The FDCPA Claims

The Court's task is simple. It must determine whether Utah or Ohio law applies to the Agreement. If Ohio law applies, as described below, attorney fees were verboten, and plaintiff has stated a plausible claim for relief. If Utah law applies, attorney fees were proper and provided for in the Agreement. Under Utah law, plaintiff has failed to state a claim under the FDCPA.

In what is now Ohio Rev. Code § 1319.02, Ohio law allows recovery of attorney fees when a contract of indebtedness that includes a commitment to pay attorney fees "is enforced through judicial proceedings or otherwise after maturity of the debt." The statute specifically and unambiguously states that a contract of indebtedness does not include "indebtedness incurred for purposes that are primarily personal, family, or household." Ohio

Rev. Code § 1319.02(1). In short, "Ohio law prohibits creditors from recovering attorney's fees in connection with the collection of a consumer debt." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (citing *Gionis v. Javitch, Block & Rathbone, LLP*, 238 F. App'x 24, 25 (6th Cir. 2007)). Defendants' demand for attorney fees contradicted Ohio law and may have given rise to an FDCPA claim, if Ohio law applies. On the other hand, the Utah Consumer Credit Code[4] explicitly provides for attorney fees in connection with consumer debt. "A consumer credit agreement may provide for the payment of reasonable attorney's fees in the event of a default and referral to an attorney[.]" Utah Code Ann. § 70C-2-105.[5] Both events occurred with respect to plaintiff: he defaulted, and American Express retained attorneys to file a state court debt collection action. Under Utah law, a lawful demand for attorney fees is not false, misleading, unfair, or unconscionable and thus cannot raise an FDCPA claim.

      1.      The Law of the Case Doctrine

      The Court issued a Memorandum Opinion and Order in this case stating "[b]ecause the Agreement contains a choice of law clause designating Utah law, and because Ohio law calls for the clause to be applied, the Court will evaluate the Agreement under Utah law." (Doc. No. 21 at 217.) Under the doctrine of law of the case, that determination ought to apply to all future proceedings in this case. *Wilkins v. Jakeway*, 44 F. App'x 724, 728 (6th Cir. 2002) ("The law of the case doctrine provides that 'findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation.'") (quoting *United*

---

[4] The Utah Consumer Credit Code "appl[ies] to all credit offered or extended by a creditor to an individual person primarily for personal, family or household purposes." Utah Code Ann. § 70C-1-201.
[5] Plaintiff argues that "[i]t is not at all clear that Utah law would allow creditors to obtain fees from customers." (Doc. No. 30 at 310 n.12.) Plaintiff cites *Hooban v. Unicity Int'l, Inc.*, 285 P.3d 766 (Utah 2012), in support of his meritless argument. That case, which dealt with Utah's reciprocal attorney fees statute, does nothing to contradict the plain language of the Utah Consumer Credit Code.

*States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994)). In a sense, the Court previously determined the issue being litigated: which state's laws apply to the Agreement. As an "issue[] previously determined[,]" enforcing the Agreement under Utah law has become the law of the case. *Holloway v. Brush*, 220 F.3d 767, 777 (6th Cir. 2000). In another sense, the issue before the Court—whether choice of law principles require Ohio *attorney fees law* to apply notwithstanding the Agreement's choice of law clause—remains undecided. *See, e.g., Wilkins*, 44 F. App'x at 728 (earlier ruling affirming denial of motion to dismiss was not law of the case in subsequent motion for summary judgment because issues and standards of review were different). This case does not require such nuance: Utah law applies under the doctrine of law of the case as well as choice of law principles.

    2.    Choice of Law

        This suit arises under the FDCPA, a federal statute. Yet, whether the debt collection practices complained of support an FDCPA claim depends on which state's law applies to the Agreement. *See Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 621 (6th Cir. 2012) (applying this analysis to FCRA claim requiring interpretation of underlying contract). Because the Court is not sitting in diversity, it applies contract choice of law principles derived from federal common law.[6] *Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 570 (6th Cir. 2001); *see also Coppock v. Citigroup, Inc.*, No. C11-1984-JCC, 2013 WL 1192632, at *2 (W.D. Wash.

---

[6] In his purported response to defendants' reply, plaintiff argues for the application of tort choice of law principles. Even if the Court were to consider this pleading, the result would not change. According to plaintiff, "this case sounds in tort, not in contract, [so] it is governed by the tort choice-of-law principles enunciated in *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St. 3d 339 (1984)." (Doc. No. 36-1 at 374.) Plaintiff's cart is miles before his horse. His argument presumes that the Agreement's provisions for attorney fees and for enforcement under Utah law somehow do not apply. It further presumes that Ohio's prohibition against attorney fees in collection of consumer debt applies instead. Presuming both, plaintiff then argues that he suffered a tortious injury and is entitled to tort choice of law principles. Plaintiff's argument is conceptually hollow. The Court must determine which law applies to the Agreement before it can determine whether a tortious injury occurred at all.

Mar. 22, 2013) (applying federal common law to choice of law analysis in FDCPA case). "In the absence of any established body of federal choice of law rules, we begin with the Restatement (Second) of Conflicts [sic] of Law[s.]" *Med. Mut. of Ohio*, 245 F.3d at 570 (quoting *Bickel v. Korean Air Lines Co*., 83 F.3d 127, 130 (6th Cir. 1996), *vacated in part by Bickel v. Korean Air Lines Co*., 96 F.3d 561 (6th Cir. 1996)).[7]

Under the Restatement, the law of the state chosen by the parties to a contract will be enforced unless "[t]he chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue[.]" *Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 739 (6th Cir. 1999) (quoting Restatement (Second) of Conflict of Laws § 187(2)).[8] The Court must accordingly respect and apply the parties' choice of Utah law unless one of the exceptions applies. Plaintiff argues that both exceptions do.

Under the first exception, plaintiff's assertion that Utah "lacks a substantial relationship to any of the parties in this case or the transaction at issue, i.e. Defendants' debt collection efforts" strains credulity. (Doc. No. 30 at 310.) Plaintiff shifts the analysis from what law should apply to the *Agreement* to what law should apply to the *parties in the case*. The

---

[7] The Court's previous choice of law analysis, as well as plaintiff and defendants' arguments referred to Ohio's choice of law principles, while following the Restatement (Second) of Conflict of Laws in substance.

[8] The Court does not consider § 187(1) of the Restatement. Though case law on the issue is thin, § 187(1) "concerns only those 'matters which the parties are generally considered to have the power to determine by contractual agreement.'" *Lifestyle Improvement Ctrs., LLC v. East Bay Health, LLC*, No. 2:13-cv-735, 2013 WL 5564144, at *7 (S.D. Ohio Oct. 7, 2013) (quoting George F. Carpinello, *Testing the Limits of Choice of Law Clauses: Franchise Contracts as a Case Study*, 74 Marq. L. Rev. 57, 60 (1990)). Section 187(2), on the other hand, deals with "issues which at least one interested jurisdiction has not left to party autonomy." *Id*. The Court's inquiry falls solidly within § 187(2): the availability of attorney fees is an issue that Ohio has decided for the parties through an outright ban. The parties had no power to agree to attorney fees if they were indeed contrary to the applicable state's law.

Restatement asks what state's law governs the Agreement, specifically the "contractual rights and duties" of the parties to the Agreement—plaintiff and American Express. Restatement (Second) of Conflict of Laws § 187(2). American Express, a party to the Agreement but not the lawsuit, is a Utah-based corporation who entered into the Agreement with plaintiff in Utah. Utah thus has a substantial relationship to the parties to the Agreement and the Agreement itself.[9] Plaintiff cannot escape the Agreement's terms or his contractual rights and duties just by suing a non-party. *See Johnson*, 191 F.3d at 739 (When plaintiff sued a non-party to a contract, he was "bound by the choice of law provision negotiated for and agreed to in his contract."). The substantial relationship exception fails plaintiff.

Under the second exception, plaintiff must show that application of Utah law would be contrary to a fundamental policy of Ohio law *and* that Ohio has a materially greater interest than Utah in the issue. Defining "fundamental policy," the Sixth Circuit has stated, "a statute may embody a fundamental state policy if it is designed to protect a person against the oppressive use of superior bargaining power [as, for example, in a statute] involving the rights of an individual insured as against an insurance company[.]" *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1123 (6th Cir. 1987) (citation omitted) (alteration in original). Utah law would contravene a fundamental policy of Ohio law when "there are significant differences in the application of the law of the two states." *Banek v. Yogurt Ventures USA, Inc.*, 6 F.3d 357, 362 (6th Cir. 1993) (citation omitted). Here, Ohio's attempt to shield Ohio debtors from extra debt collection-related fees exacted by those with superior bargaining power fits

---

[9] Even if the Restatement required a state to have a substantial relationship with the parties to the lawsuit rather than the parties to the contract, the result would not change. Though plaintiff describes the transaction as "Defendants' debt collection efforts," a better description of the transaction at issue might be: defendants' debt collection efforts on behalf of a Utah client on a Utah debt arising from a Utah agreement.

within the definition of a fundamental policy. Moreover, Utah's attorney fee policy directly opposes Ohio's attorney fee policy. Utah permits attorney fees in consumer debt collection, and Ohio does not. *Compare* Utah Code Ann. § 70C-2-105 *with Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).

Though plaintiff has shown contravention of a fundamental Ohio policy, he has not shown that Ohio has a materially greater interest than Utah. Plaintiff states "the parties and the transaction[] share many connections to Ohio, yet seemingly none to Utah. Thus, Ohio has a materially greater interest in the transaction at issue." (Doc. No. 30 at 311.) Again, plaintiff substitutes the parties *to the lawsuit* for the parties *to the Agreement*, the proper subject of the Restatement's inquiry. Utah's interest in enforcing an attorney fees clause—in all respects proper under Utah law—in a contract signed by a Utah party abounds. Ohio also has an interest in prohibiting attorney fees in consumer debt collection cases against Ohio debtors. Comparing both interests and considering that one party is located in Utah, holds the debtor's account in Utah, and entered into the Agreement in Utah, the Court cannot say that Ohio's interest is materially greater than Utah's. *See Sekeres v. Arbaugh*, 31 Ohio St. 3d 24, 26 (1987) (Ohio did not have materially greater interest when contract was performed and given final approval in another state). Respecting the parties' choice and protecting their justified expectations, Utah law applies.

In a similar case, the Sixth Circuit, though it did not discuss choice of law,[10] tacitly approved this Court's decision to apply Utah law. It noted, when, as here, a credit card

---

[10] "[I]t appears that appellant waived its argument that the case may be disposed of on the basis that Arizona law . . . governed Ms. Gionis' contract[.]" *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 30 n.1 (6th Cir. 2007) (Steeh, J., dissenting).

company, through counsel, "attache[s] the credit card agreement to the complaint," plaintiff has "less room to argue" that the applicable law is Ohio law "since the agreement explicitly defines 'applicable law' as 'federal law and laws of [Utah].'" *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 29 (6th Cir. 2007). Here, plaintiff has no room to argue for Ohio law. Plaintiff agreed to be governed by Utah law, attorney fees fall within that Agreement, and this Court already has decided that Utah law applies to the Agreement.

Under Utah law, American Express properly contracted for attorney fees. Defendants' demand for fees upon plaintiff's default was proper and lawful. Nor do defendants' alleged attempts to collect attorney fees outside of the state court complaint violate Utah law. Plaintiff has failed to state a claim for relief under the FDCPA, and his FDCPA claims are DISMISSED.[11]

B.  Ohio Claims

The Court has already held that Utah law governs claims arising from the enforcement of the Agreement. Accordingly, plaintiff is precluded from bringing claims pursuant to Ohio statutory law that may have arisen in relation to the Agreement. *See Concheck v. Barcroft*, No. 2:10-cv-656, 2011 WL 3359612, at *8 (S.D. Ohio Aug. 3, 2011). Ohio law does not apply.[12] Moreover, given that Utah law allows for attorney fees, the actions complained of

---

[11] Having disposed of plaintiff's FDCPA claims on the basis of contract interpretation, the Court does not find it necessary to address the Noerr-Pennington doctrine, absolute privilege, or litigation immunity.

[12] Even if the OCSPA or Ohio law applied to this dispute, they do not apply to defendants in this context. The OCSPA "specifically excludes transactions between financial institutions and their customers." *Lee v. Javitch, Block & Rathbone, LLP*, 522 F. Supp. 2d 945, 956 (S.D. Ohio 2007). An OCSPA claim, therefore, "would not lie against" a law firm "directly represent[ing]" a financial institution "in attempting to collect [a] debt[.]" *Id*. A cursory look at the state court complaint (Doc. No. 1-1), shows that defendants directly represented American Express, a financial institution exempt from the OCSPA; thus, "the transaction sued on would not be covered by the statute." *Id*. If defendants had instead purchased the debt from American Express, *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 976 (N.D. Ohio 2009), or had been assigned the debt, *Lee v. Javitch, Block & Rathbone, LLP*, 484 F. Supp. 2d 816, 821 (S.D. Ohio 2007), neither of which the parties allege, the OCSPA would properly apply to the dispute. In

11

cannot rise to the level of deceptive consumer practices under Ohio law. Plaintiff's OCSPA claims are DISMISSED.

## IV. CONCLUSION

For the reasons set forth above, defendants' motion for judgment on the pleadings is GRANTED. This case is DISMISSED.

**IT IS SO ORDERED**.

Dated: February 21, 2014

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

this case, however, the OCSPA does not cover the dispute or the defendants.